When this case was called in the afternoon both parties insisted that it might lie over until the next day. But by the Court: It must be continued or tried, it is however discretionary with the Court. When such a request is made late in the evening and a lengthy cause is likely to come on, they will grant it by consent of both parties, but very rarely otherwise. It was then agreed to continue the cause until next court. On the next day an application was made by the counsel on both sides to set aside the continuance and to try the cause.
All the parties to suits in this court are interested in the question now before us. There is certainly much more business than we can do during the term, and now to go back for the trial of this cause would be doing injustice to others. If however the gentlemen of the bar who represent their clients will consent to it, the Court have no objection on this *Page 270 
occasion, but it is an application that should be rarely attended to. There was no objection from the bar, and the Court proceeded to the trial of the cause.
The plaintiff produced a grant to Thomas Polk, dated July 10, 1788, for 5000 acres in the middle district on the head waters of Harpeth, No. 720 poles north, eighty-four east, with the continental line 1040 poles south, 824 poles west, 1036 poles to the beginning.
It was admitted by both parties that the interference of the grants is correctly laid down in the plat. The defendant produced a grant dated September 26, 1795, for 5000 acres, to George Parks, number of warrant 447, located 25th of October, 1783, on the south side of Cumberland River, beginning on the continental line near where it crosses Big Harpeth, running up, including both sides for complement. It was admitted that the defendants had the oldest entry. It is represented in the annexed plat.
The south-west and south-east corners are common to both tracts. The 1000 acres claimed by the defendants is in the south-east corner. It appeared that a line was run by public authority for the continental line in the latter part of the year 1782, and another line by public authority several miles more to the south was run in February, 1784. The question with the Court and jury was which of these two lines was intended by the entry under which the defendants claimed.
John Davis said he had been acquainted with both lines since the year 1792, and had always heard the first line called the commissioners' line, and the other the continental line, that Harpeth is much larger where the first line crosses it than where the last does, which is seven or eight miles higher up, and more south. Major Tatum said that Major Freeman, the United States surveyor, made the southern boundary of the State two miles and 296 poles further south than General Smith had formerly done. Oliver Williams, a deputy surveyor in the second district, stated, that, by actual measurement from Smith's experimental line, to the last line run for the continental line near the head of the east *Page 271 
fork of Stone's River, was forty-eight miles and forty-eight poles. That he ran the eastern boundary of the military reservation, (which by law should be fifty-five miles south of the northern boundary of the State), and, by actual measurement, found it to be 57½ miles in length from the northern boundary to the intersection of the line run in February, 1784. That as the State is one and a half degrees wide from north to south, making 105 miles, he concluded that the last line run in the year 1784, is, if not perfectly accurate, too far to the south.